We'll hear from 22-962 and we'll let everybody get set up and the room to empty. That is to say, the people to leave who are leaving, so we can hear. Thank you. Just a minute till we get our doors closed. All right, Attorney Peterson, you've reserved two minutes for rebuttal and you may proceed whenever you're ready. Thank you, Your Honors. Good morning. Your Honors, Rebecca Peterson on behalf of Plaintiff Appellate Kathleen Paradoski. The issue on appeal here is narrow and straightforward. It is whether the district court improperly decided as a matter of law that there is no triable issue on Plaintiff's New York General Business Law 349 omission claim as to heavy metals in the two specific dog food diets at issue here. Plaintiff respectfully requests that this court answers that in the affirmative and reverses summary judgment as to that issue. It is undisputed that the reasonable consumer standard as articulated throughout the years in New York governing jurisprudence should have applied here. What exactly was Petford supposed to put on these labels that you claim they unlawfully did not do? Well, Your Honor, there could have been a disclaimer that no heavy metals are added, but they're naturally occurring in the environment. Certain foods out there have that regarding MSG or nitrates. We're not in the business to tell Champion what to put on their bag, but there could have been a disclaimer. That's what this whole lawsuit is about. I apologize. The exact terming, you're correct. I mean, we're saying they should have told him, but they could have put something on the bag that said no. What did the law require them to put on the label that they didn't put on the label? Something that would have told consumers that the two diets at issue here contained heavy metals. Counsel, have you petitioned the FDA, which is in charge of labeling foods and other products? We have not petitioned the FDA. The FDA actually- You have or you have not? We have not. Why not? Because it seems to me that's more reasonable than individual lawsuits all over the country. Well, we have not because we believe that the protections under the general business law, Section 349, provides for this relief. Remember, this is not at a motion-to-dismiss stage. This is at a summary judgment stage, and there were various facts in the record that at least create a disputed fact as to whether the label was misleading. And it's clear under New York law and jurisprudence, especially the Guardian Insurance- Counsel, you're not alleging that Champion's making a representation that its foods were free of any risk of heavy metal, right? We did not. This is an omission claim, and so there's no misrepresentation. And, for instance, the court made clear in the Guida or Guide NV Guardian Insurance, life insurance case, that omissions are actionable. And, in fact, that 349 is a broad protection statute. The consumer could not have reasonably obtained the information. And, as I understand it, the point is food in dog food has heavy metals in it. Yes, Your Honor. So isn't that information that the consumer could reasonably have obtained? No, Your Honor. No, we think that, at least at this stage with the record and the facts that are in front of the court, that the information about these two specific dog food diets, which is the information relevant to the consumers here, that include, number one, plaintiff's testimony. She knew heavy metals were in the periodic element table. She knew that fish could have heavy metals, but she didn't know it was in Champion's dog food. You're not alleging that these dog food products were unsafe for your dog's client, are you? No, this is not a personal injury claim. This is a straight omission claim. I mean, there is evidence in the record that talks about the heavy metals- Your client's dogs could have eaten a case of this stuff every week for their entire lives and nothing would have happened, right? That's not in the record, and that's not what is at issue in this case. So I can't answer that, Your Honor. I apologize. Can I just step you back to what you were saying? She knew that there was fish. Well, she knew that fish contains heavy metals, right? She said she knew that some fish contained heavy metals, yes. Did she know there was fish in the food? You know, one diet specifically has rainbow trout. The other diet has herring oil and catfish meal. It's on the back of the bag. Again, this is- So the answer to that question is yes. She didn't testify whether or not she knew about the herring oil or catfish meal. I mean, I can't put a quote in that. Can you draw any conclusions from the advertised fresh fish and poultry in the dog food? So can you draw any conclusions from that? I'm sorry, could you, the first part I didn't hear. I'm sorry. Don't the packages advertise fresh fish and fresh poultry made into the dog food? Only one of them actually have the fresh fish, and that's the rainbow trout, and that's the Akana Meadowlands. The Akana Heritage free run poultry only says chicken on the front. It has the, I believe that one has the herring oil and the meal on the back and the ingredients. Are you suggesting that the consumers that you are representing are so ill informed in the general public that they do not know that those products contain trace amounts of chemicals or metals? Your Honor, I don't think that the record shows. Nothing Champion put in shows- I'm talking to you about your client. My client, too. She said she, yes, her testimony on record under oath is she didn't know it was in the Champion pet food. So yes, she's saying she was not in the know that it was there. And also, Champion's put nothing in the record that shows reasonable consumers make that connection. And if you look at the Guardian life insurance case, the dissent argues- Wait, I'm sorry. Just so I understand, the connection that you're saying we can't, on summary judgment, assume a reasonable breeder knows is there's heavy metals in fish. Fish is in the pet food. And then this is the piece you say we can't assume. Therefore, there's heavy metals in the dog food. I would say that it was improper on the record here. Because of the testimony of plaintiffs, Champion's own employees involved in the manufacturing of the pet food, saying they knew it was naturally occurring, knew fish was in the food, but said they didn't know it was in the food. We have Dr. Poppingaes, their expert's opinion, saying companies like Champion can manufacture dog food with the purpose of eliminating and decreasing the amount of heavy metals in there. We also have Silverman's testimony that was not excluded by the court. He excluded certain parts that testified consumers expect Champion to process out heavy metals. And so I think what we're doing here is we're imposing a duty on the consumer and not Champion. And if you look at the Guardian life insurance case, the dissent- But under your theory, any product that contained fish, for example, under your theory, would have to have some sort of warning about heavy metal, wouldn't it? Possibly. And your Honor, if you look at the labels- Hundreds of thousands of products are going to have to get stickered or have their labels rewritten to mention heavy metals, even in cases where they propose no danger of health in any way. Your Honor, you know- Does that make sense to you? I can't tell you if everyone would, because this case is specifically about Champion Pet Foods and what's in the record here. And I don't know about- The consequences of the rule that you are urging us to adopt, that's all I'm saying. Well, in the Guardian life insurance, the dissent did raise the possibility of sweeping liability, and that was rejected by the majority. And in fact, in that dissent, they also said- You want us to adopt a rule along the lines that I just rehearsed for you? Along- I apologize, I didn't hear that last part. Along the lines that I suggested, that under your theory, if they're heavy metals, which are typically present in fish, any label that has fish in it would have to have some warning about heavy metals, even if they weren't dangerous. Your Honor, I don't think that's what we're asking. We're asking that this goes to the jury based on the record in front. And so it will be the jury that gets to decide-  Whether or not a reasonable consumer acting reasonably could reasonably obtain this information. You know, New York law is very specific. They say reasonable consumer. They also say reasonably acting. And then they finally say reasonably obtained. And the record here has enough of a factual dispute as to whether a consumer going into a dog food store should have researched heavy metals online in the soil, in the nutrients, in fish. Should we assume the reasonable consumer makes basic logical inferences? Or is your argument that that's fact dependent? Well, there's nothing here I would say for the factual logic inferences here. There's nothing in the record to show that a logical reference would be- I understand that, but I'll ask you to answer my question. Does the reasonable consumer make basic logical inferences? Well, under New York law, they include the ignorant and those that just go by general impression and appearances when buying products. So no, I think New York has a broader reasonable consumer standard than other states. That has not been overturned. Counsel, I tend to agree with you that every item that's in the food should be listed. I think that's correct. That is correct. But is the forum for accomplishing that individual cases all over the country? Or is it something that Congress or one of the federal agencies should decide rather than doing it on a case by case basis? GBL 349 isn't the same in every state. Why would New York require the people that sell goods here to suffer a greater burden than people in other states? Your Honor, that's a good question. And obviously, Congress and heavy metals have become a hot issue. Right. And this is since we filed this case. We have the baby food report that came out where they said they shocked consumers. They broke the trust. Because it's easy for us as educated, well-knowledgeable individuals, Your Honors, and us attorneys, to say everybody knows heavy metals are everywhere. But I will tell you, they do not. And the record here shows they do not. And so Congress is acting as to baby foods. They told the FDA. But dog food's not there yet. And shouldn't we do the same thing with this claim you have about heavy metals and dog food? Congress should tell the FDA. I do not believe so. California has Prop 65. They have warnings there that are required there that are not required in other states. Companies do not go out of business. We have lots of times there have been things in the past where they won't put on labels, but because of lawsuits, they're put on labels. And whether or not if defense is right and that everybody knows everything has heavy metals, why would the disclaimer hurt their business? They would be telling a consumer something they already have. And so I don't think there's a real concern about having them add something like that. Like I said, there are- Thank you, Karen. Sorry, I apologize. That's all right. We do have two minutes for rebuttal. Thank you. And we'll hear from Attorney Cooper. Good morning, Your Honors, and may it please the Court. As you heard, plaintiff's appeal boils down to a single legal issue on a single claim. And that argument, her argument is that the district court applied the wrong standard in granting summary judgment on an omissions claim under Section 349.  She's just incorrect about that. The district court applied the exact same law and standard that the plaintiff is arguing today. In the Oswego case, the New York Court of Appeals held that a 349 omissions claim requires proof that the omitted information was known only to the defendant. That is the test. I'll ask you the same question I asked your friend on the other side. How should we assume that a reasonable consumer makes basic logical inferences? Because it seems to me that's how we get to that a reasonable consumer could have reasonably contained the information that the food contained heavy metals. If they know what's in the food and they know all the food contains heavy metals, therefore they know that the dog food contains heavy metals. But counsel's right that there's case law that says even ignorant consumers are to be taken into account. So how would you answer my question? So yes, we can assume that a reasonable consumer acting reasonably is making reasonable and ordinary logical leaps that a person of ordinary intelligence would make. So yes, I think we can assume that. That's the only thing that reasonable consumer can mean. What about the less educated and unreasonable consumer who does not know that seeing fish on the label implies heavy metals? So the Court of Appeals was really clear about how it was approaching this issue. Your Honor, the unreasonable consumer who doesn't know doesn't have protection under the omissions portion of the statute. So it would still be possible to state a claim against a manufacturer if, for example, a manufacturer omitted a key ingredient from an ingredient list. That's not alleged here. It might be possible to state a claim against a manufacturer who added metals to foods and didn't disclose that. That's not alleged here. It might be possible to state a claim against someone who said, my product is safe, but it turns out that the product wasn't safe. That's not alleged here. The only thing that's alleged here on this claim is that this defendant failed to disclose the presence or risk of heavy metals in the food. It's a very extreme theory. Again, it's not that there was an- With all due respect- I'm sorry? I don't think it's so extreme. I think people have a right to know what they're ingesting and what they're giving to their pets. I don't think it's extreme at all, but please continue. So I just want to be clear about what I mean is extreme. The theory that is being asserted here is that Champion omitted information about the mere presence. That they knew. They knew there were heavy metals. Of course, their white paper tells us that they did the research and knew it, but they don't make that available to consumers. Well, they posted that white paper on the Internet, Your Honor. So the test, according to the New York Court of Appeals in Oswego, is if there could be liability for an omission where the business alone possesses material information that is relevant to the consumer and fails to provide the information. There can be no dispute here that this is not information that Champion alone possessed. First of all, Champion did disclose all of its ingredients on the bag. What you heard earlier is that on the one bag it featured fish on the front, but in both products fish is listed as a prominent ingredient on the ingredient list for the food. So there's no undisclosed ingredient or additive in this case. Also, the fact we're talking about is not a fact that's about Champion or its products uniquely at all. It's a fact about the environment. You heard counsel say that the heavy metals we're talking about, we're not talking about additives. We're talking about atoms. We're talking about heavy metals in the products that you include in the manufacture of your dog food. That's correct. If you have that information, it's not readily available to the average consumer, especially the average dog consumer. If you want someone who's bright enough and has Internet access to go to Champion's website and find the white paper, I think that's asking too much of someone that just wants to feed their dog. The test according to the New York Court of Appeals that binds this case is whether this is information that was solely in the manufacturer's possession. This is not a fact that is solely about Champion's food at all. It's a fact about the environment. These elements are ubiquitous. Excuse me. You were solely in control of the information of what was included in Champion's dog food. Only you, not the general public. So the ingredients were listed on the label. All the ingredients were listed on the label. Not what was in the ingredients. So this would be to find liability here would be tantamount to requiring all manufacturers of food that contains fish, for example, to have a disclosure on the label. Not even food that contains fish. Let's say you sell really fancy dog food and it's just fish. Exactly. If it's just fish that you're selling, this ruling would require a disclosure that the fish contains heavy metals, right? Yes. I had smoked salmon for breakfast this morning. My smoked salmon contained heavy metals and the package doesn't say- I agree with you. That's why I think that the district court or the appellate court of one circuit in the country is not the right forum for determining that. I think it should be a federal agency or Congress that tells food manufacturers like Champion that they have to put heavy metals on the label if they know about them. I'm very sympathetic. I understand, Your Honor. And I hear what you're saying. And I think if we were talking about should there generally be a requirement generally for all producers to change their labels? You're absolutely right, Your Honor. That's something that could be a conversation at the legislature. It could be a conversation at the FDA. And there may be good reason for that, particularly- I agree. Although then we can envision the lobbying fight between the fish producers and the poultry producers and the poor dog owners on the other side who wouldn't stand a chance in hell. But the other thing I think is important, Your Honor, is that someone who knows about these foods should be making these judgments, right? Because we also don't want our labeling to be so overwhelming that it's not useful to consumers. So, for example- I agree. What the label would say here if this was disclosed was there may be trace amounts of heavy metals at safe limits in this food, right? And you can use the percentages that are in the white paper and show that they're well below what the FDA or FTC has found to be safe levels. And let the consumer use that information to make a choice. I don't see how it would hurt the business. But if the only champion was going to do it, I can see that might be unfair. That's our argument here, Your Honor. We're not making a general argument about whether there should be a change in labeling laws for dog food in the United States. Our argument is that there is no basis under New York law for liability in this case. I did want to refer quickly to the argument that this New York statute protects even the ignorant and uninformed. And there's a line that plaintiff has quoted. It's actually from a dissent. It's not from a majority. It's from a dissent. And that is the court- a dissenting judge did say that. Now, he was talking about the consumer- the business law as a whole. That is not a standard that applied specifically to an omissions claim. Because we certainly understand that if a false statement is made- there's case law and it's been cited in this case- that if a false statement is made on the front of a package, you can't have fine print on the back of the package that says the opposite. That's not the kind of case we have here. The kind of case we have here is, was there a duty to disclose this information that was unique to champion that can be the basis for civil liability? And the answer is no. While we've had this discussion, I just turned to the relevant listing in your white paper. And I see that the maximum tolerable limits were developed by the NRC, because of the heavy metals, and the FDA. Those are the agencies who did this, who should say if it should be on packages. That's what I think. That's right. And it wouldn't be entirely possible for citizens or anyone to petition to have that changed. There's simply no basis for private liability on champion alone in this lawsuit. Thank you, counsel. Thank you very much. Mr. Peterson, you do have two minutes for a vote. I just want to hit on a few things. First, it's not a just a dissent. If you look at page 14 in our brief, it's the quote about the vast multitude to safeguard against the ignorant, the unthinking, and the credulous. And it says misrepresentation or omission. And there is a collection of cases. Second, there is nothing in New York law that says balancing the unfairness to a company is why a claim should not be able to go forward. So the question here is, based on the facts, plaintiff's testimony, plaintiff's expert, other consumer's testimony, champion's own employees, champion's active concealment, whether there was a omission claim under 349. Even the district court himself noted in his opinion that it is not a reason to deny plaintiff's claims at 47 because it's in all foods. And so I don't think that the argument of sweeping liability for other companies is something that is even an equation that you consider under New York law. They don't have that as a element to the claims. They don't say, OK, it's a reasonable consumer acting reasonably. Could they reasonably obtain? But we also need to balance what would this do to the company or the industry as a whole. And again, I don't agree that consumers are educated in heavy metals. This was filed years ago. I mean, for us to sit here and say everyone knew that heavy metals are in fish. People knew heavy metals were in tuna. Did they know it was in rainbow trout? Rainbow trout is what's in the bag. Did they know it was in dog foods? Did they know that when you put in a small amount of oil that any heavy metals would still be in the end product? The evidence here shows that that should have gone to the jury. And thank you for your time. Thank you. Thank you both. We appreciate your arguments and your briefs. The case taken.